IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GERALD DEAN MORGAN | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) JURY DEMANDED |
| | ) |
| BOARD OF PROFESSIONAL | ) Case No.: |
| RESPONSIBILITY OF THE | ) |
| SUPREME COURT OF TENNESSEE, | ) |
| and SANDRA GARRETT, in her | ) |
| individual capacity | ) |
| | ) |
| Defendants. | ) |

# COMPLAINT

Plaintiff Gerald Dean (Jerry) Morgan, for his claim against the Board of Professional Responsibility of the Supreme Court of Tennessee ("the Board") and Sandra Garrett, individually, states as follows:

## PARTIES

1. Jerry Morgan is a citizen and resident of Williamson County in the Middle District of Tennessee.

2. The Defendant Board of Professional Responsibility of the Supreme Court of Tennessee (the "Board") is an organization created by the Supreme Court of Tennessee to regulate the conduct of licensed Tennessee attorneys. The Board consists of 9 attorneys and three public, non-attorney members appointed by the Tennessee Supreme Court.

3. On February 1, 2019, Mr. Morgan was employed by the Board as Disciplinary Counsel handling appeals to the Tennessee Supreme Court regarding attorney discipline among

lawyers licensed in Tennessee. He was a public employee until his unlawful termination on December 11, 2020.

4. The Board is organized through the Administrative Office of the Courts. The primary place of business of the Board is in Brentwood, Williamson County and within the Middle District of Tennessee.

5. The Defendant Sandra Garrett was at all times material hereto Chief Disciplinary Counsel of the Board. As related to this matter, her duties "are to employ and supervise staff needed for the performance of Disciplinary Counsel's functions." Tenn. Sup. Ct. Rule 9, § 7.2. Ms. Garrett therefore was responsible for the hiring and firing of Mr. Morgan.

6. The duties of Ms. Garrett as described in paragraph 5 are administrative in nature. Employees are not entitled to due process hearings and Ms. Garrett performs no adjudicative functions regarding the employment of Disciplinary Counsel.

## JURISDICTION AND VENUE

7. This is a claim brought pursuant to 42 U.S.C. § 1983 and a federal question is therefore presented under 28 U.S.C. § 1343(a)(3).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside in or are organized within this district, and the events or omissions complained of occurred within this district.

## ALLEGATIONS OF FACT

9. Mr. Morgan's primary responsibilities were the handling of appeals from hearing panel decisions to a senior judge and all appeals from such judges to the Supreme Court. In the performance of these duties he represented the Board in an appeal by attorney Brian

Manookian. Mr. Manookian was then and remains the subject of numerous complaints by attorneys and judges alleging unethical behavior.

10. Mr. Manookian had been relieved of a prior suspension from the practice of law but was alleged to have violated conditions of reinstatement. On October 11, 2019, the Supreme Court entered an order finding that he had violated the conditions. It reinstated the suspension with the specific finding that Mr. Manookian "poses a threat of substantial harm to the public."

11. A hearing panel on May 20, 2020, recommended a two-year active suspension of Mr. Manookian's license to practice law in Tennessee. Mr. Morgan had no involvement with the matter at that level.

12. Mr. Manookian, through his attorney Daniel Horwitz, moved for a stay of the appeal. This motion was denied by Senior Judge William Acree after a hearing on November 23, 2020.

13. The next day, November 24, 2020, Mr. Horwitz, on behalf of Mr. Manookian, filed a "Motion to Disqualify" Plaintiff, claiming him to be "an anti-Muslim bigot." In support of this proposition, Mr. Horwitz quoted the language of tweets posted by Mr. Morgan in 2015 and 2016 during the presidential campaign that ultimately resulted in the election of Donald J. Trump. Mr. Morgan was not employed by the Board, or any state agency, when those messages had been posted.

14. The motion in a footnote alluded to twitter comments made by Plaintiff in 2019 and 2020 related to the presidential election. These included criticisms of the Democratic Party and candidates of said party, including former Vice President Joe Biden.

15. Mr. Manookian claimed that Mr. Morgan had an anti-Muslim bias that might prejudice him, as his wife was a Muslim and his children "are being raised in a Muslim household." Upon information and belief, Mr. Manookian was not married at the time of the 2015 and 2016 posts. Mr. Manookian made no allegations of specific bias or conduct on the part of Mr. Morgan in his case or in any other matter pending before the Board.

16. Mr. Manookian and his counsel did not claim in the motion to disqualify that Mr. Morgan had violated any of the Tennessee Rules of Professional Conduct or had acted unfairly toward Mr. Manookian or any other attorney in any manner.

17. Mr. Morgan has never communicated with Mr. Manookian at all, whether through letter, phone call, email, or any other manner, nor has Mr. Morgan met him or anyone in his family.

18. Mr. Morgan's posts were indisputably political in nature.

19. Mr. Morgan's posts discussed issues that were controversial but part of the national discussion surrounding Donald Trump and issues raised in the 2016 and 2020 elections. Many were views publicly expressed by Trump. Indeed, the views expressed represented those of a majority of Tennessee voters, who overwhelmingly voted for Trump in November, 2016.

20. On December 11, 2020, Plaintiff was informed of his termination in a phone call that included the Defendant Garrett, Counsel for the Court Rachel Harmon, and Stephanie Holliday, Human Resources Manager for the Administrative Office of the Court. Ms. Holliday confirmed the dismissal by memorandum of December 11, 2020, attached hereto as Exhibit A to this Complaint. Ms. Holliday presumed to remind Plaintiff of his duty to protect the public by investigating and prosecuting cases "without discrimination

4

or bias." She failed to acknowledge that there were no accusations against Mr. Morgan of discrimination or bias in the Manookian case or any other.

21. Ms. Holliday made reference to Twitter posts of 2019 and 2020 alleging that an unnamed lawyer facing undefined disciplinary action in another case had by some means not disclosed "question(ed)" Mr. Morgan's recommendations to the Board. What these recommendations were and how they might plausibly be related to the postings was not revealed.

22. Ms. Holliday disingenuously claimed to "acknowledge and respect your right to free speech." She then made clear that Mr. Morgan was being terminated for his exercise of that very right. No misconduct in his work of any kind was alleged. None existed. And the Board and Ms. Garrett knew this.

23. Mr. Russell Willis, Deputy Chief Disciplinary Counsel for the Board, *on the same day* of Mr. Morgan's termination, filed a memorandum opposing Mr. Manookian's motion to disqualify, attached hereto as Exhibit B to this Complaint. Mr. Manookian now sought to disqualify not merely Mr. Morgan, but all disciplinary counsel.

24. In that memorandum, Mr. Willis, speaking on behalf of the Board, stated: "First, Mr. Manookian has neither alleged nor produced any statement, pleading or conduct by the undersigned Disciplinary Counsel *or any counsel employed by the Board*, demonstrating or suggesting this disciplinary action has been influenced by bigotry, race, religion or other arbitrary classification." (emphasis added)

25. The Board further argued through Mr. Willis that disqualification of one's counsel "is a drastic remedy and is ordinarily unjustified based solely on an appearance of impropriety," citing Clinard v. Blackwood, 46 S.W. 3d 177, 187, (Tenn. 2001).

5

26. Thus, the Board and Ms. Garrett found that allegations they argued as insufficient to justify even removing Mr. Morgan from the Manookian case were nonetheless sufficient to justify the termination of his employment.

27. As demonstrated by the December 11 termination memorandum, the Board and Ms. Garrett specifically considered the content of Mr. Morgan's political speech and not his conduct in the office he held. Mr. Morgan had to that date been very successful in his work for the Board. He had never prior to his termination been accused of any favoritism, bias or ethical violation. The earlier political opinions he expressed preceded his employment by at least three years, and had nothing to do with the practice of law.

28. In fact, during his seventeen (17) year career as an attorney, Mr. Morgan has never been accused of violating any ethical rules, and that fact remains true as of the filing of this Complaint.

29. Prior to Mr. Manookian's motion to disqualify, the Board had consistently praised the quality of Mr. Morgan's work, and he never had any negative employment reviews.

30. On March 1, 2021, almost four (4) months after his wrongful termination, Ms. Garrett sent Mr. Morgan a letter notifying him that the Board had opened a disciplinary file against him, attached as Exhibit C to this Complaint.

31. Included with the letter was the very same motion to disqualify filed by Mr. Manookian and his counsel on November 24, 2020, which led to his wrongful termination.

32. Despite the absence of a single accusation of an ethical violation, and despite the absence of any *complaint* being filed against him, the March 1, 2021 letter from Ms. Garrett required Mr. Morgan to respond to the letter within ten (10) days, or face potential suspension.

6

33. The letter specifically stated: "Your failure to timely respond to this complaint of misconduct will result in the filing of a Notice of Petition for Temporary Suspension, pursuant to Section 12.3 of Tennessee Supreme Court Rule 9."

34. Because the letter did not include any actual complaint filed against Mr. Morgan, there were no allegations to which he could respond.

35. Nonetheless, the Board opened disciplinary File No. 66879-6-ZZ. Following a demand from counsel to Mr. Morgan he has been informed that the case has been dismissed.

## THE LAW IS CLEARLY ESTABLISHED

36. It has long been held that a public employee has a First Amendment right to speak on matters of public importance and that such protected speech may not lawfully form the basis for dismissal from public employment. Pickering v. Board of Education of Township High School District 205, Will County, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed. 2d 811 (1968); Rankin v. McPherson, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed. 2d 315 (19870   (free speech rights outweighed employer's concerns over comments regarding an assassination attempt.) Ms. Garrett is a licensed attorney and either knew of these precedents or had the training to easily find them.

37. Mr. Morgan's "tweets" were not made in his capacity as a public employee. Indeed, he was not employed at all by a government agency in 2015 and 2016. See Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 1641 L.Ed. 2d 689 (2006).

38. Mr. Morgan's speech had not affected his performance or contradicted policy. In fact, the Board itself so argued in opposition to Mr. Manookian's motion to disqualify. His termination was an administrative action and not an action taken by Ms. Garrett regarding

7

any particular case or the prosecution thereof. Mr. Morgan was not accused of violating any rules or regulations regarding his employment.

## CAUSE OF ACTION

39. Mr. Morgan had a clearly established right guaranteed by the First Amendment to the Constitution of the Unites States to speak, write, publish or communicate his views on matters of public concern, free from prior restraint or subsequent retaliation from any agency of government or any person acting under color of law.

40. The Board is an instrumentality of the State of Tennessee.

41. Sandra Garrett performs administrative functions including the hiring of Disciplinary Counsel with the approval of the Board.

42. The termination of the Plaintiff was not a judicial or quasi-judicial function performed by Ms. Garrett.

43. Ms. Garrett was a "state actor" and acted "under color of law" in her termination of Mr. Morgan.

44. Mr. Morgan's expressions of political opinion were not a part of his job duties as Assistant Disciplinary Counsel. They were not made in the performance of his duties and included views expressed prior to his employment.

45. The Board is sued herein for injunctive relief and this claim is therefore not barred by the 11th Amendment to the Constitution of the United States.

46. Ms. Garrett is sued for money damages in her individual capacity for the violation under color of law of Mr. Morgan's clearly established constitutional rights, privileges and immunities.

8

47. The Constitution protects the rights of citizens to free speech. This right is not exclusive to any political views. Governmental entities and their employees are not entitled to interfere with said rights based merely on the content of the views expressed or the opinions state actors might have of such views.

48. The right to free speech and free thoughts is fundamental to democracy and to our rights as free men and women. In the words of Justice Oliver Wendell Holmes, Jr.: "If there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought-not free thought for those who agree with us but freedom for the thought that we hate".

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands as follows:

1. That the Defendants be served with process and required to answer or otherwise plead within the time required by law;

2. That judgment be had against the Board of Professional Responsibility and Sandra Garrett in her individual capacity for compensatory and punitive damages in such an amount found by the jury to be appropriate;

3. That a jury be empaneled to try all issues so triable;

4. That a permanent injunction be entered restraining and enjoining the Board and Ms. Garrett from taking any adverse action as a result of his protected speech, including any action against Plaintiff through the means of any disciplinary file opened against him premised on his speech;

5. That a mandatory permanent injunction be entered requiring the Board to expunge all reference to any disciplinary file premised on Mr. Morgan's speech from its internal

computer tracking systems, and removing any indication that Mr. Morgan was terminated for cause;

6. That Plaintiff be awarded his reasonable attorney's fees and the costs and expenses of this litigation pursuant to 42 U.S.C. § 1988; and

7. That Plaintiff be awarded such additional, general relief to which he may be entitled.

Respectfully submitted,
THE BLACKBURN FIRM, PLLC

/s/ W Gary Blackburn
W Gary Blackburn
Bryant Kroll
213 Rep John Lewis Way, Ste 300
Nashville, TN 37219
P: (615) 254-7770
F: (866) 895-7272
gblackburn@wgaryblackburn.com
bkroll@wgaryblackburn.com
*Attorneys for Plaintiff*