UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GERALD DEAN MORGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:21-cv-00274 |
| | ) |
| BOARD OF PROFESSIONAL | ) |
| RESPONSIBILITY OF THE SUPREME | ) |
| COURT OF TENNESSEE and SANDRA | ) |
| GARRETT, in her individual capacity, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiff Gerald Dean Morgan was employed as Disciplinary Counsel for the Board of Professional Responsibility of the Supreme Court of Tennessee (the "Board"). After the Board's Chief Disciplinary Counsel Sandra Garrett allegedly terminated him due to statements made on Twitter, Morgan brought this action for First Amendment employment retaliation under 42 U.S.C. § 1983 against the Board and Garrett in her individual capacity. The Board and Garrett ("Defendants") have now moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, or, alternatively, under Rule 12(b)(6) for failure to state a claim. (Doc. No. 9). Morgan has responded. (Doc. No. 14). Because the Court lacks subject-matter jurisdiction over Morgan's claim against the Board due to sovereign immunity, and because quasi-judicial immunity bars any claim against Garrett in her individual capacity, Defendants' motion will be granted.

# I.

Morgan worked as Disciplinary Counsel for the Board, which is created by the Supreme Court of Tennessee. (Doc. No. 1, Compl. ¶ 2). Comprised of 12 members appointed by the Supreme Court, the Board has a grant of authority to regulate the conduct of licensed attorneys within the state. (Id. ¶¶ 2–3). Disciplinary Counsel, including Morgan, are tasked with representing the Board when attorneys appeal a pending disciplinary decision. (Id. ¶ 9). Morgan handles appeals through every level of the Tennessee judicial branch, including the Tennessee Supreme Court. (Id. ¶ 3).

In May 2020, attorney Brian Manookian appealed a decision by the Board to suspend his law license for two years. (Id.). Morgan was assigned to represent the Board on appeal. (Id.). Manookian, whose wife and children are Muslim, argued that Morgan was an "anti-Muslim bigot" whose bias might prejudice the appeal process. (Id. ¶¶ 13, 15). He subsequently filed a Motion to Disqualify Morgan from representing the Board in the appeal. (Id. ¶¶ 13, 15). To support his argument, Manookian referenced several tweets authored by Morgan from 2015 through 2020. (Id. ¶¶ 13–14).

On December 11, 2020, Chief Disciplinary Counsel Sandra Garrett, whose responsibilities included "supervis[ing] staff needed for the performance of Disciplinary Counsel's functions," terminated Morgan. (Id. ¶¶ 5, 20). Garrett cited several reasons for her decision to terminate Morgan, including: (1) Morgan's duty to protect the public by investigating and prosecuting cases "without discrimination or bias"; (2) Manookian's Motion to Disqualify Morgan for bias; (3) a separate, unnamed attorney's misconduct complaint against Morgan; and (4) Morgan's Twitter posts. (Id. ¶¶ 20–22).

## II.

Dismissal under Rule 12(b)(1) is appropriate when a federal court lacks subject-matter jurisdiction. When subject matter jurisdiction is called into question—as Defendants have done here regarding Morgan's claim against the Board—the party asserting jurisdiction bears the burden of establishing it to survive a motion to dismiss. Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). In a motion to dismiss under Rule 12(b)(1), a party may either "attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." Golden v. Gorno Bros. Inc., 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the sufficiency of subject matter jurisdiction allegations in the pleading, and the Court must accept the plaintiff's allegations as true. Ohio v. Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). Meanwhile, a factual attack challenges the actual evidentiary basis for the jurisdiction, and the Court need not presume truthfulness of the allegations. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).

A different standard applies to Morgan's individual capacity claim against Garrett under Rule 12(b)(6). There, "the complaint must include a 'short and plain statement . . . showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all of the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). But "[w]hile the complaint 'does not need

3

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Blackwell, 979 F.3d at 524 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

## III.

Defendants seek dismissal because: (1) they are entitled to sovereign immunity under the Eleventh Amendment; (2) Garrett is entitled to either absolute quasi-judicial or qualified immunity on the individual capacity claims against her; and (3) Morgan fails to state a claim for injunctive relief against Garrett in her individual capacity. (Doc. No. 9-1 at 6–11). The Court must address the sovereign immunity issue first before analyzing the merits of Morgan's § 1983 claim. See Russell v. Lundergan-Grimes, 784 F.3d 1037, 1046 (6th Cir. 2015) (holding that once sovereign immunity is raised as a jurisdictional defect, it must be decided before the merits).

A. Sovereign Immunity

Pursuant to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States." U.S. Const. Amend. XI. It is axiomatic that, in the absence of express state waiver or statutory abrogation by Congress, the Eleventh Amendment bars all suits against a state in federal court, including those for injunctive relief. Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Div., 987 F.2d 376, 381 (6th Cir. 1993) (citing Pennhurst State Schs. & Hosp. v. Halderman, 465 U.S. 89, 100–01 (1984)). As relevant here, Tennessee has not consented to suit under § 1983, see Tenn. Code Ann. §20-13-103; Berndt v. Tenn., 796 F.2d 879, 881 (6th Cir. 1986), nor has Congress abrogated States' sovereign immunity against such claims. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).

4

In addition to states, sovereign immunity extends to departments and agencies that are arms of the state, Alabama v. Pugh, 438 U.S. 781, 782 (1978), as well as to state officials, Will, 491 U.S. at 71. This includes the Board of Professional Responsibility. In Tennessee, it is "well settled that the licensing and regulation of attorneys practicing law in courts of Tennessee is squarely within the inherent authority of the judicial branch of government." Smith Cty. Educ. Ass'n v. Anderson, 676 S.W.2d 328, 333 (Tenn. 1984) (citation omitted). Moreover, the Tennessee Supreme Court "has original and exclusive jurisdiction to promulgate its own [r]ules," and "[i]ts rule making authority embraces the admission and supervision of members of the Bar of the State of Tennessee." Id. Pursuant to this grant of authority, the Tennessee Supreme Court created the Board, "which it has described as its agency." Moncier v. Jones, 803 F. Supp. 2d 815, 827 (E.D. Tenn. 2011); see also Donner v. Bd. of Prof'l Responsibility of the Tenn. Supreme Court, 277 F. App'x 575, 578 (6th Cir. 2008); Doe v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn., 104 S.W.3d 465, 470, 472, 474 (Tenn. 2003); Brown v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn., 29 S.W.3d 445, 449 (Tenn. 2000).

With these precepts in mind, federal courts have consistently applied sovereign immunity to both the Board and its Chief Disciplinary Counsel. See Moncier v. Jones, 557 F. App'x 407, 409 (6th Cir. 2014) (finding that the Chief Disciplinary Counsel for the Board was a state official subject to Eleventh Amendment immunity); Van Morgan v. Barker, No. 3:19-cv-122, 2020 WL 265282, at *3 (E.D. Tenn. Jan. 17, 2020) (noting that the Board is an "agent of the Tennessee Supreme Court" to which sovereign immunity applies); Sallee v. Bd. of Prof'l Responsibility of the Supreme Court, No. 3:15-cv-5, 2015 WL 2374230, at *6 (E.D. Tenn. May 18, 2015) (same); see also Warren v. Burdi, No. 10-11775, 2011 WL 572424, at *15–17 (E.D. Mich. Jan. 26, 2011) (finding that Michigan's counterpart to the Board is an arm of the state supreme court, which is

"entitled to Eleventh Amendment immunity in discharging its 'constitutional responsibility' to supervise and discipline attorneys"). Morgan even alleges that the Board "is an instrumentality of the State of Tennessee" and was "created by the Supreme Court of Tennessee to regulate the conduct of licensed attorneys." (Compl. ¶¶ 2, 40). It is therefore abundantly clear that the Board is an arm of the state entitled to sovereign immunity.

Morgan disagrees, primarily on the grounds that the exception to sovereign immunity set forth in Ex Parte Young, 209 U.S. 123 (1908) applies to this case. (Doc. No. 14 at 9–10). But that exception applies only where a plaintiff sues a state official in their official capacity for "prospective [injunctive] relief to end a continuing violation of federal law." Diaz v. Mich. Dep't of Corr., 703 F.3d 956, 964 (6th Cir. 2013). Where a complaint fails to "make clear what those ongoing violations are," or how injunctive relief would remedy such a violation, the exception does not apply. Boler v. Earley, 865 F.3d 391, 412 (6th Cir. 2017). Moreover, complaints "based entirely upon past acts and not continuing conduct that, if stopped, would provide a remedy to" the plaintiff are not excepted. Gean v. Hattaway, 330 F.3d 758, 776 (6th Cir. 2003).

Here, Morgan's complaint does not allege any ongoing violation of federal law by either the Board or Garrett. Instead, Morgan's allegations are based entirely on his termination. (Compl. ¶¶ 42–43). Moreover, his requests for relief, despite their styling as "injunctions" are entirely retroactive.[1] See Will, 491 U.S. at 71 (finding that suits for monetary damages against a state or state officials are barred by the Eleventh Amendment); see also Papasan v. Allain, 478 U.S. 265, 278 (1986) (finding that retroactive relief, "even though styled as something else," is barred by sovereign immunity); S&M Brands v. Cooper, 527 F.3d 500, 509 (6th Cir. 2008) (finding that the

---

[1] To the extent Morgan seeks injunctive relief restraining the Board and Garrett from opening a disciplinary file against him, such a request is also moot. Morgan admits that the Board has already dismissed any disciplinary proceeding against him. (Compl. ¶ 35).

Eleventh Amendment bars "*all* retroactive relief," rather than just "retroactive monetary relief") (emphasis in original) (citation omitted).

The "fiction" of Ex Parte Young simply does not extend to suits such as these, where there is a clear instrumentality of the state at issue and "where [any] federal law violation is no longer 'ongoing.'" Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 268 (2011) (citing Green v. Mansour, 474 U.S. 64, 71 (1985)); see also S.J. Hamilton Cty., 374 F.3d 416, 419 (6th Cir. 2004). Accordingly, Morgan's claim against the Board is barred in federal court by sovereign immunity and will be dismissed without prejudice. See Carmichael v. City of Cleveland, 571 F. App'x 426, 435 (6th Cir. 2014) (noting that dismissal for lack of subject-matter jurisdiction based on sovereign immunity should be without prejudice).

B.  Absolute Quasi-Judicial Immunity

Defendants also argue that Morgan's claim against Garrett in her individual capacity is subject to dismissal under the doctrine of absolute quasi-judicial immunity. (Doc. No. 9-1 at 6–7). The Court agrees. Absolute judicial immunity has protected judges from personal liability for actions taken in a judge's official capacity since at least the nineteenth century. See Pierson v. Ray, 386 U.S. 547, 553–54 (1967); Bradley v. Fisher, 80 U.S. 335, 347–48 (1871). Under quasi-judicial immunity, such protections also extend "to those persons performing tasks so integral or intertwined with the judicial process that [said] persons are considered an arm of the judicial officer who is immune." Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994). Courts have readily extended quasi-judicial immunity to members of disciplinary or professional licensing boards, including those in Garrett's exact role, where they function in an adjudicative, investigatory, prosecutorial, or judicial manner. See Moncier, 557 F. App'x at 409 (Chief Disciplinary Counsel for the Board of Professional Responsibility); Quatkemeyer v. Ky. Bd. of Med. Licensure, 506 F. App'x 342,

7

345–49 (6th Cir. 2012) (Board of Medical Licensure); Watts v. Burkhart, 978 F.2d 269, 276 (6th Cir. 1992) (same); Manookian v. Flippin, No. 3:19-cv-00350, 2020 WL 978638, at *5 (M.D. Tenn. Feb. 28, 2020) (like Moncier, Chief Disciplinary Counsel for the Board).

Whether quasi-judicial immunity applies is dependent upon "the nature of the function performed, not the identity of the actor who performed it . . .." Forrester v. White, 484 U.S. 219, 224 (1988). The Court must therefore examine the nature of Garrett's role in this particular case. The official seeking immunity must establish "that such immunity is justified for the governmental function at issue," Hafer v. Melo, 502 U.S. 21, 28–29 (1991), as well as supported "by overriding considerations of public policy." Forrester, 484 U.S. at 224.

Morgan contests that Garrett, in terminating his employment, functioned in an administrative role that was not intertwined with the judicial process. (Doc. No. 14 at 13). For support, he relies upon Guercio v. Brody for the proposition that firing employees in judicial contexts is "an administrative act common to all branches of government and the private sector, not the type of act normally performed *only* by judges." 814 F.2d 1115, 1119 (6th Cir. 1987). While this may be so in most instances, however, Guercio is both factually and legally distinct from the job function performed by Garrett in this case. In Guercio, a judge fired his legal secretary so the Bankruptcy Court could "function more effectively and harmoniously." Id. at 1118 (citation omitted). Conversely, here, Garrett acted "squarely within the duties and obligations delegated [to her] by the Tennessee Supreme Court." Manookian, 2020 WL 978638, at *5; see also Tenn. Sup. Ct. R. 9, § 27 (providing that "[m]embers of the board, district committee members, Disciplinary Counsel, and staff shall be immune from civil suit for any conduct in the course of their official duties"); id. § 7.2 (providing for Garrett's role to supervise staff "needed for the performance of

8

Disciplinary Counsel's functions"); id. § 16.1 (providing for disciplinary proceedings against Disciplinary Counsel arising from misconduct complaints).

Here, Morgan admits that Garrett's role was to "employ and supervise staff needed for the performance of Disciplinary Counsel's functions." (Compl. ¶ 5). Thus, even taking the Complaint's allegations as true, Morgan is not entitled to relief because Garrett was at all times acting within the scope of her duties as Chief Disciplinary Counsel. As Morgan alleges, Garrett referenced several reasons for the termination, including: (1) Manookian's Motion to Disqualify for bias; (2) a separate misconduct complaint against Morgan by another attorney; and (3) Morgan's duty to protect the public by investigating and prosecuting cases "without discrimination or bias." (Id. ¶¶ 5, 20–22, 31). Each of these reasons are "intertwined with the judicial process," Bush, 38 F.3d at 847, and integral to both the proper functioning of the Board and the judicial acts it oversees. See Barrett v. Harrington, 130 F.3d 246, 258–59 (6th Cir. 1999) (finding that acts protecting the integrity of the judicial process are adjudicatory in nature and therefore are subject to judicial immunity); see also Van Morgan, 2020 WL 265282, at *5 (citing Forrester, 484 U.S. at 223–24). Accordingly, Garrett is entitled to absolute quasi-judicial immunity for her acts in this case. Any claim against Garrett in her individual capacity will therefore be dismissed with prejudice. See id. (dismissing claim against state official on quasi-judicial immunity grounds with prejudice).

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 9) will be granted. Morgan's claim against the Board will be dismissed without prejudice for lack of subject-matter jurisdiction. Any claim for damages against Garrett in her individual capacity is barred by quasi-judicial immunity and will be dismissed with prejudice.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE